UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET |
| VERSUS | * | NUMBER 19-119 |
| BROCK MELANCON | * | SECTION "M" |

**MEMORANDUM IN SUPPORT OF**
**<u>MOTION TO SUPPRESS EVIDENCE</u>**

Brock Melancon has moved this Court to suppress evidence obtained in violation of his Fourth Amendment rights. For the reasons described herein, he respectfully urges the Court to grant his motion. Mr. Melancon's Fourth Amendment rights were violated when police officers entered and searched his home without a warrant. A search warrant was granted subsequently, but it was based upon facts learned during the first warrantless search. As a result, all evidence obtained pursuant to both searches must be suppressed as the fruits of the constitutional violation.

    **I.**    **The requirements of the Fourth Amendment.**

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

In a case like this one, where there initial search or seizure is effected without a warrant, the government bears the burden of justifying that search or seizure by proving that it falls within an exception to the warrant requirement. *See, e.g., United States v. Roch*,

5 F.3d 894 (5th Cir. 1993). "Warrantless searches and seizures are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One such exception is when "the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Kentucky v. King*, 563 U.S. 452, 460 (2011) (internal quotation marks and citations omitted). That exception, however, "is available only on a showing by the government that the officers' entry into the home was supported by probable cause and justified by an exigent circumstance." *United States v. Aguirre*, 664 F.3d 606, 610 (2011); *see also Newman*, 472 F.3d at 236 ("In order to enter a person's residence, even under exigent circumstances, law enforcement first must have probable cause that contraband is inside or that an illegal act is taking place."). "Probable cause exists when under the 'totality of the circumstances . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Newman*, 472 F.3d 233, 237 (5th Cir. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The Supreme Court has identified several exigencies that may justify a warrantless search supported by probable cause. *King*, 563 U.S. at 460.

## II.     Events leading to the illegal search of Mr. Melancon's home.

On April 23, 2019, at approximately 3:19 A.M., Terrebonne Parish Sheriff's Deputies Dillon Condetti and Tyler Fitch approached a suspicious looking vehicle in the parking lot of the Dollar General. After speaking with the occupant of the car, Trinity Bergeron, the deputies learned that Mr. Bergeron was waiting to pick up his children and

their mother, Casey Robichaux. Mr. Bergeron added that Ms. Robichaux had been in an altercation with the person she was staying with. The deputies believed that Mr. Bergeron's explanation for what he was doing was suspicious, so they asked for consent to search his vehicle, which he gave.

After speaking with Mr. Bergeron, the deputies patrolled the area of Mozart Drive. They observed two women with bags and two small children walking down the street. One of those women was Casey Robichaux, who told the deputies that she had been in an argument with the man with whom she was staying—specifically, she needed her children's car seats from the residence, but the man would not let her have them.

The deputies followed Ms. Robichaux back to the residence at 324 Mozart Drive, arriving there at approximately 4:04 AM. Deputy Condetti approached the residence and met with Wesley Hempel outside. He asked Mr. Hempel for his ID. Deputy Condetti asked Mr. Hempel what occurred and he explained that Ms. Robichaux had an argument with his friend (apparently referring to Brock Melancon). Deputy Condetti then encountered Mr. Melancon. He asked Mr. Melancon for his identification, but Mr. Melancon said that he left it inside the residence. Deputy Condetti followed Mr. Melancon into the residence. After handing over his ID, Mr. Melancon went back outside. Deputy Allen told Deputy Condetti that he needed to speak with Mr. Melancon. The subjects were separated, but Mr. Melancon and Mr. Bergeron began arguing. Deputy Condetti remarked in his report that he was "in fear for his safety" and that there had been several shootings in the area. He asked Mr. Melancon if anyone else was inside the residence. Mr. Melancon responded no.

After Mr. Melancon told Deputy Condetti that no one else was in the residence, Deputy Condetti elected to conduct a "security sweep for officer safety." While searching the home, Deputy Condetti allegedly observed a bag containing marijuana floating in the toilet of the master bedroom.

Deputy Condetti returned outside and searched Mr. Melancon's person. He found $522.00, but no contraband. He ordered Mr. Melancon to stand by another deputy. Deputy Condetti allegedly observed Mr. Hempel take a pack of cigarettes out of his pocket and place it on the porch. Deputy Hempel discovered a piece of suspected heroin in the cigarette package. After finding the suspected heroin, Deputy Condetti remarked in his report that, "Both Melancon and Hempel were detained." *See* Defendant's Exhibit 1, Initial Report of Dillon Condetti at BSN 000125.

Shortly thereafter, Lieutenant Henry Dinh arrived with a search warrant and took over the investigation. The search warrant was signed by Judge George Larke of the 32nd Judicial Circuit at 6:03 A.M. The basis of the warrant application was the marijuana found floating in the toilet, as well as the suspected heroin found in the cigarette package and statements made by Casey Robichaux after the "security sweep" was conducted. *See* Defendant's Exhibit 2, Terrebonne Parish Search Warrant Case No. SO19042164 at BSN 000144. During the search, law enforcement officers discovered an adderol pill (in Casey Robichaux's purse), twenty-six sertraline pills (in Casey Robichaux's purse), $1,511.00 (in Casey Robichaux's purse), a bag of marijuana in the toilet bowl, two packs of empty zip lock bags, a metal tray containing marijuana, a metal grinder containing marijuana residue, a digital scale, a large bag of suspected methamphetamine, a bag of suspected fentanyl, a

mason jar containing suspected heroin, a bag containing ten alprazolam pills, a bag containing one alprazolam pill, a bag containing suspected heroin, a Smith and Wesson .40 caliber handgun and ammunition, a Bersa .380 handgun, a Colt AR-15 semi-automatic rifle, a Smith and Wesson M&P semi-automatic rifle, a rifle bag containing eight loaded 5.56 caliber rifle magazines. All three suspects were placed under arrest and transported to Sheriff's Department for questioning.[1]

### III. Deputy Condetti's search of the residence was unconstitutional under the Fourth Amendment.

When he made his initial entry into the home, Deputy Condetti reported that he was simply following Mr. Melancon, who did not object. He subsequently conducted what he called a "security sweep" of the residence. A protective sweep is only permissible when the law enforcement officer has "articulable reason to believe that someone else might be inside [the] residence pos[ing] a threat to the officer or the bystanders, or that any evidence [is] at risk of destruction or removal." *United States v. Menchaca-Castruita*, 587 F. 3d 283, 295 (5th Cir. 2009).  When evaluating an exigency, courts consider, "the appearance of the scene of the search in the circumstances presented as it would appear to reasonable and prudent men standing in the shoes of the officers." *Id*. at 290 citing *United States v. Blount*, 123 F. 3d 831, 837 (5th Cir. 1997). Exigent circumstances were not present here. There

---

[1] The suspected methamphetamine and heroin were later confirmed after DEA laboratory testing. On June 13, 2019, Mr. Melancon was charged by Indictment in the Eastern District of Louisiana with Conspiracy to Possess Methamphetamine and Heroin, Felon in Possession of a Firearm (Smith and Wesson M&P semi-automatic rifle), Possession with Intent to Distribute 50 grams or more of Methamphetamine and Heroin, Possession of Firearms in Furtherance of Drug Trafficking (Smith and Wesson .40 caliber semi-automatic handgun, Bersa .380 caliber semi-automatic handgun, Colt AR-15 semi-automatic rifle, and Smith and Wesson M&P 15 semi-automatic rifle). Rec.Doc.1.

was no evidence that anyone else was inside the residence, nor was there any reason to believe that evidence was at risk of destruction or removal. Furthermore, a warrant was secured relatively quickly, even though the incident occurred early in the morning. There is no evidence which would support Deputy Condetti's entitlement to conduct a "protective sweep" of the home, particularly one invasive enough to discover contraband inside a toilet bowl.

>   **IV.   All evidence obtained as a result of the warrantless search of Mr. Melancon's residence must be suppressed.**

After the "security sweep" of Mr. Melancon's residence, the police obtained a search warrant. The subsequent search of the residence is the product of Deputy Condetti's unlawful search of the house under the guise of a security sweep and is therefore the product of unlawful actions on the part of law enforcement. The warrant itself was based on fruits of the illegal search. The warrant application states, in pertinent part:

> While at the residence, Deputy Condetti conducted a security sweep of any other persons inside the residence. During the sweep, Deputy Condetti found a bag of marijuana that was afloat in the toilet of the bathroom. The security sweep yielded no other persons inside.

Since the warrant was derived from the prior illegal search, the exclusionary rule applies. In the instant case, the evidence uncovered during the search conducted pursuant to the warrant is directly derived from the violation. It is unquestionably the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S, 471, 503 (1963). There is a direct causal link between the initial illegal search and the subsequent search with a warrant.

*Unites States v. Beene*, 733 Fed. Appx. 740 (5th Cir. 2018) (examining whether defendant's statement was tainted by prior illegal search).

The exclusionary rule is subject to three safety-valve doctrines which may allow the poisoned fruit's admission: independent source, inevitable discovery, and attenuation. *United States v. Mendez*, 885 F. 3d 899, 909 (5th Cir. 2018). None of the "safety-valve doctrines" are present in this case. The reasons for the search are listed on the face of the warrant: the marijuana found in the toilet, the heroin found in the cigarette pack and the statements of Casey Robichaux. However, as the police report makes clear, Ms. Robichaux's statements were made and the heroin was found after the "security sweep" of the residence. Therefore, they too were the product of Deputy Condetti's illegal conduct and not independent sources of probable cause.

### V.     Conclusion

The police searched Mr. Melancon's house without a warrant and in the absence of exigent circumstances. They were able to obtain a warrant to search the home based on information obtained as a result of that initial warrantless search. Accordingly, all evidence seized during those searches must be suppressed as fruits of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471 (1963).

**WHEREFORE**, Mr. Melancon respectfully requests that this Court suppress the evidence obtained pursuant to the unlawful search of his home or, in the alternative, order an evidentiary hearing regarding the circumstances of the search wherein he can demonstrate to the Court that it violated of his constitutional rights.

Respectfully submitted, this 23rd day of September, 2019.

>CLAUDE J. KELLY
>Federal Public Defender
>Eastern District of Louisiana
>
>s/ Maura Doherty
>MAURA DOHERTY
>Assistant Federal Public Defender
>500 Poydras Street, Suite 318
>Hale Boggs Federal Building
>New Orleans, Louisiana 70130
>(504) 589-7930
>Maura_doherty@fd.org

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 23, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to the following: Maurice Landrieu, Assistant United States Attorney.

                                           s/ Maura Doherty
                                           MAURA DOHERTY
                                           Assistant Federal Public Defender