UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 19-119 |
| BROCK MELANCON | SECTION M |

## ORDER & REASONS

Before the Court is *pro se* defendant Brock Melancon's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255[1] and his supplemental memorandum in support.[2] The United States of America ("the government") responds in opposition,[3] and Melancon replies in further support of his motion.[4] Having considered the parties' memoranda, the record, and the applicable law, the Court denies the motion.

## I.    BACKGROUND

On June 13, 2019, Melancon was indicted by a grand jury on four counts: (1) conspiring to distribute methamphetamine and heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 846; (2) being a convicted felon in possession of a firearm, in violation of 28 U.S.C. §§ 922(g)(1) and 924(a)(2); (3) possessing with intent to distribute methamphetamine and heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(C), and 18 U.S.C. § 2; and (4) possessing firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).[5]   After finding that Melancon could not afford an attorney, the magistrate judge

---

[1] R. Doc. 255.
[2] R. Doc. 257.
[3] R. Doc. 258.
[4] R. Doc. 259.
[5] R. Doc. 1.

appointed the federal public defender's office to represent him.[6]  Federal public defender Maura

Doherty first entered an appearance on Melancon's behalf at his arraignment on June 24, 2019.[7]

Melancon was remanded into federal custody that day.[8]  Trial was originally set for August 26,

2019, but it was continued several times during 2019.[9]  With a January 13, 2020 trial date, the

parties both made significant pretrial preparations in late 2019 and early 2020, including, but not

limited to, litigating Melancon's motion to suppress through a hearing and ruling.[10]  Jerrod

Thompson-Hicks, also of the federal public defender's office, was enrolled as additional counsel

for Melancon on December 16, 2019.[11]

On January 8, 2020, days before trial, counsel for Melancon requested a plea agreement

hearing, also known as a *Frye* hearing, "to inform Mr. Melancon of the maximum penalties he

face[d] if convicted after a trial, as well as potential plea offers made to him by the government."[12]

This Court granted that motion and scheduled a *Frye* hearing for January 10, 2020.[13]  On January

10, 2020, the day the *Frye* hearing was set, this Court received correspondence from Melancon

dated January 7, 2020, requesting that the Court remove Doherty as counsel of record and appoint

new counsel because he thought Doherty was unprepared for trial and had not been acting in his

best interest.[14]  That day, January 10, this Court conducted the *Frye* hearing as scheduled and

determined that the defendant knowingly rejected the government's plea agreement.[15]  At the

hearing, the Court also addressed Melancon's request for new counsel.[16]  After questioning

---

[6] R. Doc. 15.
[7] R. Doc. 22.
[8] R. Doc. 23.
[9] *See* R. Docs. 22; 34; 48; 50.
[10] *See, e.g.*, R. Docs. 45; 53; 54; 58.
[11] R. Doc. 64.
[12] R. Doc. 71 at 1 (citing *Missouri v. Frye*, 566 U.S. 134 (2012)).
[13] R. Doc. 73.
[14] R. Doc. 77-1.
[15] R. Doc. 82.
[16] *Id.*

Melancon and his counsel, the Court found that the defendant failed to show good cause and denied his request for new counsel.[17]  Finally, also on January 10, Melancon requested to continue the trial, which this Court granted, and it reset his trial from January 13, 2020, to April 13, 2020.[18]  The COVID-19 pandemic then necessitated several successive continuances throughout 2020 and early 2021.[19]  This Court ordered its final pandemic-related continuance on April 5, 2021, setting Melancon's trial for August 23, 2021.[20]

On November 2, 2020, amidst the series of pandemic-related trial continuances, Doherty filed a motion for leave to withdraw as Melancon's counsel, explaining that she had taken another position in the federal public defender's office and that her withdrawal was in Melancon's best interest.[21]  The motion also asked this Court to appoint Criminal Justice Act panel member Sean Toomey as Melancon's new counsel.[22]  This Court granted the motion.[23]

On April 23, 2021, the government moved to continue Melancon's August 23 trial date for two reasons: the government's scheduling conflicts, and discussions between the government and defense counsel about "whether th[e] matter may be resolved without the necessity of a criminal trial."[24]  This Court granted that motion[25] and then two more motions to continue filed by Melancon,[26] until the trial was eventually set for May 23, 2022.  On January 7, 2022, this Court

---

[17] *Id.*; *see also* R. Doc. 77.
[18] R. Doc. 80.
[19] R. Docs. 94; 104; 106; 114; 127.
[20] R. Doc. 127.
[21] R. Doc. 110.  Thompson-Hicks did not withdraw as counsel at that time, although he apparently no longer took an active role in Melancon's representation after Doherty's withdrawal.
[22] *Id.*
[23] R. Doc. 111.
[24] R. Doc. 133.
[25] R. Doc. 135.
[26] R. Docs. 144; 154.

granted Melancon's motion to enroll Alec Andrade and Sheri Corales, two of Toomey's associates, as additional counsel of record.[27]

On March 8, 2022, Melancon moved for a hearing to determine counsel, which this Court granted.[28]  The hearing was conducted on March 15, 2022.[29]  At the hearing, Melancon alleged that his counsel failed to meet with him and provide requested paperwork, and he claimed that he and his counsel had differences of opinion on case strategy.[30]  Toomey stated that he, Andrade, and Corales had been investigating the case, developing trial strategies, drafting motions, seeking evidence from the government, and meeting with Melancon by telephone, video conference, and, when possible, in person.[31]  Toomey stated that he was well-positioned to try the case.[32]  Toomey also explained that some of Melancon's requests were impossible to fulfill because the documents Melancon sought did not exist or the requests were premature, such as Melancon's request for *Brady* materials.[33]  Finding that Melancon's allegations were conclusory and not credible, and that Toomey and his associates were prepared to continue in their representation of Melancon, the Court denied Melancon's request for new court-appointed counsel.[34]  The Court additionally explained to Melancon that Toomey was a qualified attorney, and Toomey's representation would be much better if Melancon cooperated with and listened to Toomey.[35]

The Court conducted a final pretrial conference on April 20, 2022.[36]  Following the conference, on April 27, 2022, another associate from Toomey's firm, Cristian Soler, enrolled as

---

[27] R. Doc. 151.
[28] R. Docs. 157 (counsel's motion for hearing to determine counsel); 158 (order granting counsel's motion).
[29] R. Doc. 160.
[30] R. Doc. 161 at 5.
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.* at 6.
[35] *Id.*
[36] R. Doc. 162.

additional counsel of record for Melancon.[37]  Toomey and his associates made several pretrial

filings on Melancon's behalf between May 6 and May 17, 2022: two motions *in limine*, a motion

to compel production of items for trial, proposed jury instructions, proposed voir dire questions,

and an expedited request for this Court to issue subpoenas.[38]  On May 10, Melancon again moved

to continue trial because he wanted to develop evidence related to a defense strategy Melancon

only revealed to his counsel in late March of 2022, over a year after Toomey enrolled as his

counsel.[39]  After ordering and receiving briefing by both parties, this Court denied that motion.[40]

Then, on May 18, 2022, this Court held a second *Frye* hearing, at which it again found that

Melancon knowingly, willingly, and voluntarily rejected the plea agreement offered by the

government.[41]

On Friday, May 20, 2022, with trial set to begin the following Monday, Melancon indicated

he would like to enter a plea of guilty as to each of Counts 1, 2, and 3 of the indictment.[42]  To

comply with Melancon's request, the parties and the Court coordinated to hold a special

rearraignment hearing by videoconference that afternoon.[43]  At the beginning of the hearing,

Maurice Landrieu, the assistant United States attorney, made the following statement to the Court:

> **LANDRIEU**: Your Honor, if I may, before the Court starts, advise the Court as to
> where we are.  We certainly appreciate the Court for giving us the opportunity to
> resolve this matter this afternoon.  However, I just spoke to Mr. Melancon on the
> phone with his attorneys while we were on mute here, and Mr. Melancon has
> indicated to me that he does not understand all of the ramifications or all the
> wording in the plea agreement and factual basis.  While he did not go into specifics

---

[37] R. Doc. 164.

[38] R. Docs. 169 (motion for expedited issuance of subpoena); 173 (motion to compel production of jail communications); 182 (Melancon's first motion *in limine*); 183 (Melancon's proposed jury instructions); 184 (Melancon's proposed voir dire questions); 189 (Melancon's second motion *in limine*).

[39] R. Doc. 172.

[40] R. Docs. 174 (briefing order as to Melancon's motion to continue); 181 (order denying Melancon's motion to continue trial).

[41] R. Doc. 191.

[42] R. Doc. 197.

[43] R. Doc. 233 at 28-29.  Due to the COVID-19 outbreak, Melancon waived his right to appear in person at his rearraignment and requested that the proceeding be held via videoconference.  R. Doc. 196.

with me right now concerning what he did not understand, he's asked for more time, and I told him we were out of time because obviously we're at literally 4:00 o'clock on Friday afternoon and his trial starts on Monday morning.

So before the Court started with its colloquy, I just wanted the Court to ask Mr. Melancon if that was correct and whether we wanted to go forward with the plea now. Obviously, we're not going to force the defendant into pleading guilty or signing some documents that he's not comfortable with, but those documents aren't going to change between now and Monday. So I just want to give it over to the Court.

**THE COURT**: So Mr. Melancon, I have heard from Mr. Landrieu. I want to ask whether you're in a position now to move forward with a plea. Do you understand the documents that have been presented to you?

**THE DEFENDANT**: Somewhat, sir, yes, sir.

**THE COURT**: Do you understand the documents enough to enter a plea that's knowing, willing, and voluntary?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: I didn't hear that. Is that a yes?

**THE DEFENDANT**: Yes, sir.

**THE COURT**: Okay, all right. I'm going to see how far we get on this, then. But if at any point in time during the course of this proceeding, I feel like this plea is not knowing, not voluntary, and not willing, we're going to go to trial on Monday, okay?

**LANDRIEU**: Yes, sir.[44]

The Court then conducted the rearraignment. During the hearing, Melancon indicated that he understood the proceedings, the elements of the crimes with which he was charged, the maximum penalties he faced, the advisory nature of the sentencing guidelines, and the constitutional rights he waived by entering a plea of guilty.[45] Further, Melancon explicitly said that he understood the plea agreement and agreed with the government's factual basis.[46] This Court asked Melancon three different times, at three different points in the hearing, how he wanted to plead to the

---

[44] R. Doc. 234 at 2-3.
[45] *Id.* at 8-16.
[46] *Id.* at 17-19.

charges.[47]  All three times, he answered that he wanted to plead guilty.[48]  In the end, the Court found that Melancon's plea of guilty was knowing, willing, and voluntary, and had a basis in fact that contained all the elements of the crimes charged, and the Court entered a judgment of guilty as to Counts 1, 2, and 3 of the indictment.[49]

In preparation for sentencing, United States Probation ("probation") prepared a draft presentence investigation report.[50]  Before sentencing, Melancon raised two objections to that report,[51] one of which is relevant to the pending motion.  He noted that probation determined that, based on the information in the factual basis, Melancon should receive two sentencing enhancements: one for threatening an individual and one for obstructing justice.[52]  He objected to the two enhancements prior to his sentencing because "the language included in the factual basis supporting these enhancements was inartful."[53]  Melancon explained that, in making this objection, he was not withdrawing his guilty plea since the "enhancements [were] not evidence … necessary to establish the elements [of] the crimes to which he pleaded guilty," but he was asking this Court to conduct an evidentiary hearing at sentencing to determine the truth of the facts underlying the sentencing enhancements.[54]  However, at Melancon's sentencing hearing on October 27, 2022, this Court overruled the objection because "[t]he facts underlying both enhancements are clearly articulated in the factual basis to which the defendant agreed and signed."[55]  This Court also noted that, in connection with Melancon's objection, he "failed to provide any competent rebutta[l] evidence to negate the information contained within the factual [basis] and had the opportunity to

---

[47] *Id.* at 13, 16, 21.
[48] *Id.*
[49] *Id.* at 31-32.
[50] R. Doc. 201.
[51] R. Doc. 207.
[52] *Id.* at 4.
[53] *Id.*
[54] *Id.*
[55] R. Doc. 233 at 5.

do so, both in his objections to the presentence investigation report, his sentencing memorandum, and in his motion for downward variance."[56]

The Court sentenced Melancon to imprisonment for terms of 262 months as to Counts 1 and 3 of the indictment and 120 months as to Count 2 of the indictment, with all terms to run concurrently.[57]  The Court further sentenced Melancon to five years of supervised release as to Counts 1 and 3 and three years of supervised release as to Count 2, also to run concurrently.[58]  At the conclusion of the sentencing hearing, Toomey indicated to this Court that, at Melancon's request, he would be filing a notice of appeal on Melancon's behalf.[59]  In connection with Melancon's appeal, Toomey asked "to put on the record a personal recitation of [Toomey's] recollection of the timing of the day on which [Melancon] pled guilty," as Melancon believed Toomey's statement would have some relevance for Melancon's appeal.[60]  The government did not object to Toomey's request.[61]  Then, on the record, the following exchange occurred:

> **TOOMEY**: Yes, your honor.  Just by way of creating a record for potential appellate purposes.  Since my involvement with this case, the defendant had indicated that he had no desire to plead guilty and was requesting a trial by jury.  And as a result, I never engaged in any substantive negotiations for a plea with the government.  Though I had always known that there was an opportunity to plead guilty, we did not engage in what would be the typical exchange of a factual basis with negotiating language or anything like that through any of our – any of my involvement with this case.

> This trial was set for a particular Monday [*viz.*, May 23, 2022] and the week before there was a *Frye* hearing before this court [on May 18, 2022], and the Friday [*viz.*, May 20, 2022] before the Monday trial at approximately 11:30 a.m.  I was contacted by the defendant, and he told me he had decided that he did want to accept the government's offer to plead guilty.  I explained to the defendant that I wasn't sure at this late date that that was a possibility as a practical matter, but that I would, because it's his desire, attempt to see if that was possible.

---

[56] *Id.*
[57] R. Doc. 221 at 2.
[58] *Id.* at 3.
[59] R. Doc. 233 at 27.
[60] *Id.*
[61] *Id.*

I then called immediately Mr. Landrieu, explained to him what I had just learned, and he understandably said that he didn't know if that was possible but certainly would give it consideration and reach out to the Court and find out if that was even a possibility.

He returned or called me back sometime later, explained that the Court was willing to conduct a re-arraignment that afternoon, my best memory was it was at 3:30, but that's I'm sure a part of the transcript of the re-arraignment, to be done virtually via Zoom.

I asked Mr. Landrieu to get me copies of the factual basis and plea agreement, which took him some time to put together, but he did. As soon as I received that, I printed them out immediately, I ran to my truck, which is located at One Shell Square [in the Central Business District of New Orleans], I drove as quickly as I could to St. Tammany Parish, there was traffic. I arrived at the facility maybe 15 minutes before the re-arraignment started. My associate Alec Andrade, who is in the courtroom today, had gotten there earlier because he was on the north shore [of Lake Pontchartrain in St. Tammany Parish], and so Mr. Melancon had a chance to review the factual basis and plea agreement prior to me arriving.

I spoke to him about the documents. He expressed frustration and displeasure. I immediately called Mr. Landrieu on my cell phone, put him on speaker, and allowed Mr. Landrieu and Mr. Melancon to have a conversation. In summary, Mr. Landrieu understandably made it clear that this was the 11th hour, there was no additional time to negotiate, that had passed, and at this time it was simply a choice that Mr. Melancon had to make whether he wanted to accept the terms that were before him or whether he did not.

During almost at the end of that, literally at the end of that conversation your Honor appeared on the Zoom, and I believe once – and this should be on the transcript – Mr. Landrieu noted that he wasn't sure that this plea was going to go forward because of how Mr. Melancon was communicating. And I believe your Honor communicated back that we'll see what happens.

And that is my best recollection, it's not a perfect recollection, but that's my best recollection of the timing of the events of that day. And that's all I have to say. Thank you, Judge.

**THE COURT**: All right, Mr. Toomey. Do you want to say anything, Mr. Landrieu?

**LANDRIEU**: Yeah. Your Honor, I have, obviously, no objection to Mr. Toomey's recollection of the facts as he sees them in connection with this guilty plea.

And as this Court is well aware, this wasn't the first time we got to the brink of trial in connection with this case. This case has been going on in this court since 2019, I believe, and we were, I think, one day away from trial when the case got continued at the last minute. I had multiple discussions with his previous attorney, I've had multiple discussions with Mr. Toomey concerning this case and any potential resolutions.

It was, in fact, Mr. Melancon who started at the last minute decided he wanted to plead guilty. And we did, in fact, enter into plea negotiations with him, as the record is I think crystal clear, with his signed plea agreement. The government has agreed to dismiss Count 4 as long as he pled to the other counts. The factual basis is the factual basis. It's signed, it's initialed on every page. And the transcript of that re-arraignment is, I think, crystal clear as to what happened.

And I have no reasons to doubt that this Court, just like it does in every re-arraignment proceeding, has followed the letter of the law to the tee. And if he wants to present some type of concern about that process, he has every right to do so, I guess, if it's not waived in his plea agreement.

**THE COURT**: All right. So the Court will just say, the plea was itself at the 11th hour, certainly Friday before a Monday trial. Everything was set in place to go to trial on Monday, and the Court was fully prepared to do so, but took extraordinary efforts to try to accommodate Mr. Melancon in making the guilty plea, which was his expressed desire at that time, and asking that counsel for the defense and the prosecution, the government take extraordinary efforts themselves in order to make sure that it was done.

Notwithstanding that, the Court took the pains it usually takes in going through every step of a re-arraignment to ensure that the plea was voluntary, willing, and knowing and that the Court is confident based upon the questions that were posed and the answers that were given at that re-arraignment proceeding that it was indeed a voluntary, willing, and knowing plea.

And I am not sure really what the statement does here, because it is made after a sentence has been imposed on the basis of that guilty plea.

So anyway, I just wanted to make that statement also in order to round out the record for whatever may come.[62]

After the sentencing, Toomey indeed filed a notice of appeal on behalf of Melancon and then withdrew from the case.[63] Melancon, assisted by appointed appellate counsel, argued on appeal that this Court's use of his prior drug conspiracy conviction to qualify him as a career offender was improper.[64] He urged that inchoate offenses are not included in the definition of a "controlled substance offense" under the U.S.S.G. § 4B1.2(b) and that the guidelines commentary is not entitled to deference.[65] Recognizing that his argument was foreclosed by Fifth Circuit

---

[62] *Id.* at 27-31.
[63] R. Docs. 223 (notice of appeal); 224 (motion to withdraw Toomey, Andrade, Corales, and Soler as counsel and appoint new counsel).
[64] R. Doc. 240-1 at 1-2.
[65] *Id.*

precedent, Melancon simply sought summary affirmance of his sentence, which the Fifth Circuit granted on January 19, 2024.[66]  Thereafter, the United States Supreme Court denied Melancon's petition for a writ of certiorari.[67]

On September 29, 2025, Melancon moved this Court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, claiming that Toomey and Andrade provided ineffective assistance of counsel.[68]

## II.    LAW & ANALYSIS

### A. Section 2255 Standard

A federal prisoner serving a court-imposed sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence."  28 U.S.C. § 2255(a).  A narrow set of claims are cognizable on a § 2255 motion: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the statutory maximum; or (4) the sentence is "otherwise subject to collateral attack."  *Id.*  A claim of error that is neither constitutional nor jurisdictional is not cognizable in a § 2255 proceeding unless the error constitutes "'a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

When a prisoner files a § 2255 motion, the district court must first conduct a preliminary review, and "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion."

---

[66] *Id.* at 2 (citing *United States v. Vargas*, 74 F.4th 673, 680-90 (5th Cir. 2023) (en banc), as to which a petition for certiorari was then pending).

[67] R. Doc. 244 (letter dated Apr. 29, 2024). In the meantime, cert had been denied in *Vargas* on February 20, 2024. *See* 144 S. Ct. 828.

[68] R. Doc. 255 at 1.

Rules Governing Section 2255 Proceedings for the U.S. District Courts, Rule 4(b). But, if the motion raises a non-frivolous claim to relief, the court must order the government to file a response or take other appropriate action. *Id.* The judge may then require the parties to expand the record as necessary and, if good cause is shown, authorize limited discovery. *Id.* Rules 6-7. Then, after reviewing the government's answer, any transcripts and records of prior proceedings, and any supplementary materials, the court must determine if an evidentiary hearing is warranted. *Id.* Rule 8. An evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). However, the court need not hold an evidentiary hearing if the prisoner fails to produce an "independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quotation omitted).

A § 2255 petitioner bears the burden of establishing his or her claims of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). Yet, courts "liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel." *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

### B. Waiver

As oft stated by the Fifth Circuit, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *United States v. Del Toro-Alejandre*, 489 F.3d 721, 722 (5th Cir. 2007) (quotation omitted). The plea waiving such relief must be knowingly and voluntarily made and is not rendered involuntary simply because induced by "a plea bargaining situation."

*Gafford v. United States*, 438 F.2d 106, 107 (5th Cir. 1971). But an ineffective-assistance-of-counsel argument survives such a waiver "when the claimed assistance directly affected the validity of that waiver or the plea itself." *United States v. Crain*, 877 F.3d 637, 646 (5th Cir. 2017) (quotation omitted). Here, Melancon's plea agreement contained a waiver of his right to collaterally challenge his sentence through a § 2255 petition, but specified that he retained the right to raise a claim of ineffective assistance of counsel in an appropriate proceeding.[69]

### C. Ineffective Assistance of Counsel

"An ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *United States v. Owens*, 94 F.4th 481, 486 (5th Cir. 2024) (quotation omitted). Claims for ineffective assistance of counsel are governed by the two-part standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail under *Strickland*, a defendant "must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense." *Owens*, 94 F.4th at 486. Counsel's assistance is deficient if it "fell below an objective standard of reasonableness." *Id.* (quotation omitted). Judicial scrutiny of counsel's performance is "highly deferential" and applies a "strong presumption" that counsel's assistance was reasonable. *See Strickland*, 466 U.S. at 689. To meet the prejudice prong, a defendant "must affirmatively prove, and not merely allege, prejudice." *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). Deficient assistance of counsel prejudices a defendant if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea," the prejudice inquiry "focuses on a

---

[69] *See* R. Doc. 199 at 3.

defendant's decisionmaking." *Lee v. United States*, 582 U.S. 357, 364, 367 (2017).  Therefore, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."  *Id.* at 369.

"A failure to establish either deficient performance or resulting prejudice defeats the claim."  *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).  "Thus, even where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary.  In such a case there is no actual and substantial disadvantage to the defense."  *DeVille*, 21 F.3d at 659 (quotation and alteration omitted).

### D.  Analysis

As an initial matter, in Melancon's reply, he claims that, because "the government's response merely places Mr. Melancon's claims into direct contest," this Court is required to conduct an evidentiary hearing pursuant to § 2255(b).[70]  However, as discussed, where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," a court need not conduct an evidentiary hearing.  28 U.S.C. § 2255(b).  As this Court will explain throughout this analysis, the evidence in the record conclusively shows that Melancon is entitled to no relief on his ineffective-assistance-of-counsel claim.  Thus, this Court finds that an evidentiary hearing pursuant to § 2255(b) is not required.

Melancon currently asserts two grounds for relief.  The Court will address both grounds, and the Government's response to each, in turn.

---

[70] R. Doc. 259 at 1.

1. **Melancon is not entitled to relief on ground one, in which he claims that Toomey and Andrade failed to engage in any meaningful negotiation with the government concerning the factual basis and plea agreement.**

Melancon's first ground for relief claims that Toomey and Andrade failed to meaningfully engage in negotiation of the factual basis and plea agreement.[71]  He says they first received a copy of the factual basis and plea agreement on the morning of his May 20, 2022 rearraignment, and then he argues that they should have requested a continuance of the rearraignment to determine whether there was a possibility of negotiating more favorable plea terms or language in the factual basis.[72]  Melancon claims that Toomey did not request to negotiate the factual basis or plea agreement further because he "was newly appointed and wasn't present for the initial negotiations."[73]  He submits that the attorneys violated (1) the American Bar Association's Criminal Justice Standard 4-4.1, which he says imposes upon defense counsel a duty to thoroughly investigate the allegations against a criminal defendant and to strive for the best results for every client, and (2) the Sixth Amendment, which he says requires counsel's investigation and effective preparation.[74]  Melancon concludes that, as a result of Toomey's and Andrade's failure to request a continuance, the factual basis contained language which resulted in a higher guideline range for Melancon.[75]

In response, the government argues that it was Melancon, rather than his counsel, who refused plea negotiations, given that the Court held two *Frye* hearings in Melancon's case, and Melancon rejected the government's plea offers at both hearings.[76]  It notes that the transcript of the rearraignment hearing evidences that defense counsel was aware of the plea agreement and

---

[71] R. Doc. 255 at 4.
[72] R. Doc. 257 at 4-5.
[73] R. Doc. 255 at 4.
[74] R. Doc. 257 at 4-5.
[75] *Id.* at 5.
[76] R. Doc. 258 at 7-8.

factual basis in Melancon's case.[77]  Next, the government says that Melancon fails to identify what specific facts or language he wanted to have removed from the factual basis, or how these facts affected his conviction or sentence, and that, in any event, the government would not have agreed to any suggested changes to the plea agreement or factual basis but was, instead, ready to go to trial.[78]  Then the government points out that, notwithstanding Melancon's *post hoc* assertions in his § 2255 petition, the statements he made under oath at the rearraignment hearing indicated that he agreed with and understood the information in the factual basis.[79]  Finally, the government maintains that Melancon's sentencing guideline range – specifically, his status as a career offender in accordance with U.S.S.G. § 4B1.1 – was determined based on his prior convictions, not based on any specific wording in the factual basis.[80]

In his reply, Melancon reiterates the arguments made in his motion.[81]  He also urges this Court to disregard his sworn statements during the rearraignment – that he agreed to the information in the factual basis – because, he claims, the government "pad[ded] the factual basis with conduct that didn't actually happen … with the sole purpose of causing prejudice with the judge."[82]  He implies that the allegedly untrue information in the factual basis was used as "relevant conduct" during sentencing, and thus Toomey's failure to examine whether the factual basis which Doherty negotiated with the government was favorable to Melancon, before advising him to plead guilty, amounted to ineffective assistance of counsel.[83]  Finally, Melancon argues that because Toomey was unprepared for trial and had not negotiated a more favorable plea agreement on Melancon's behalf, Melancon was forced to choose between "proceed[ing] to trial

---

[77] *Id.* at 8.
[78] *Id.*
[79] *Id.* at 8-9.
[80] *Id.* at 9.
[81] R. Doc. 259 at 2.
[82] *Id.* at 3.
[83] *Id.* at 4.

just days later with an unprepared trial lawyer" or accepting the plea offer that he says his previous attorney, Doherty, had negotiated for him.[84]

As this Court previously explained, Melancon's burden is to show that Toomey's and Andrade's performance was deficient and that their deficient performance prejudiced Melancon. None of Melancon's arguments as to his first ground for relief satisfies either of those prongs, and as a result, Melancon is not entitled to relief on the basis of the first ground raised in his motion.

### a. Toomey's and Andrade's performance did not fall below any objective standard of reasonableness.

In evaluating the arguments Melancon makes in connection with the first ground for relief, this Court again must highlight the eleventh-hour nature of Melancon's decision to plead guilty, as it finds that fact perhaps the most pertinent to its conclusion that Toomey's and Andrade's performance did not "f[a]ll below an objective standard of reasonableness." *Owens*, 94 F.4th at 486 (quotation omitted). Melancon primarily takes issue with Toomey's failure to negotiate more favorable plea agreement terms with the government. However, Toomey indicated at Melancon's sentencing hearing that Toomey and the government had not engaged in substantive plea negotiations precisely *because of* Melancon's insistence on proceeding to trial.[85] And evidence of Melancon's insistence on proceeding to trial is well-documented in the record: not only did Melancon reject plea offers at two separate *Frye* hearings, he admits in his reply that "from the outset of this case, Mr. Melancon has zealously advocated his innocence and his desire to proceed to trial."[86] Considering the volume of evidence indicating Melancon's intent to go to trial rather than plead guilty, and his admission of this intention, this Court cannot say it was objectively

---

[84] *Id.* at 6.
[85] *See* R. Doc. 233 at 28.
[86] R. Doc. 259 at 4.

unreasonable, or a violation of any American Bar Association standard, for Toomey and Andrade to focus their efforts on trial preparation rather than on negotiating a plea deal for Melancon.

Then, by the time Melancon indicated to Toomey that he would be interested in entering a guilty plea (11:30 a.m. on the Friday before the Monday trial was set to begin), Toomey could not possibly have engaged in any meaningful plea negotiations. Toomey explained that once Melancon told him about his desire to plead guilty, Toomey coordinated with the government and this Court as quickly as possible to set the matter for hearing. Working as fast as he could, including his necessary travel to Melancon's location in St. Tammany Parish, Toomey had *fifteen minutes* before the hearing was set to begin during which he could review the documents with Melancon, discuss with Melancon any qualms he had with the factual basis or terms of the plea agreement, and work to resolve them with the government. Even with such little time, Toomey contacted Landrieu to discuss the terms with which Melancon was displeased, but their conversation was cut short by the commencement of the rearraignment hearing. And nonetheless, at the start of the rearraignment hearing, Melancon indicated to this Court that he wanted to proceed with the hearing based on the documents he was given.[87]

Undeterred by this chronology, Melancon still contends that Toomey and Andrade should have requested a continuance of the rearraignment "to better assess whether negotiation [with] the government would be in the best interest of [Melancon]."[88] But any request for a continuance of the rearraignment would certainly have been futile – as the government makes clear.[89] To request a continuance of the rearraignment, Toomey would also have had to request a continuance of the trial, as trial was to begin less than one business day after Melancon's indication that he wanted to

---

[87] R. Doc. 234 at 3.
[88] R. Doc. 257 at 5.
[89] R. Doc. 258 at 8 (explaining that the government would not have agreed to any changes but was prepared to go to trial).

enter a guilty plea. But this Court had by then denied Melancon's May 10, 2023 motion to continue Melancon's trial (which had been filed by Toomey), citing, in part, Melancon's "recalcitrant, uncooperative, and frequently noncommunicative [behavior] with his counsel throughout these proceedings."[90]

Put simply, because Melancon indicated so late that he wanted to plead guilty rather than go to trial, Toomey and Andrade did not have the time to meaningfully negotiate the terms of the plea agreement once they realized Melancon did not want to go to trial. And it was not unreasonable that they did not request a continuance of the rearraignment to attempt such negotiations, as this Court had indicated by its denial of Melancon's last motion to continue trial that it would not indulge such a request. As a result, Toomey's and Andrade's lack of participation in substantive plea negotiations prior to Melancon's guilty plea did not fall below any objective standard of reasonableness.

> **b. Assuming *arguendo* that Toomey and Andrade's performance fell below some objective standard of reasonableness, Melancon was not prejudiced by their performance.**

Even if their conduct was not reasonable, the Court does not see how Toomey's and Andrade's conduct prejudiced Melancon. First, the government explained both at the May 20, 2022 rearraignment and in its opposition to the pending motion that it would not have agreed to any suggested changes to the factual basis before trial.[91] Toomey's and Andrade's attempts to negotiate the factual basis, then, would have been fruitless, and Melancon would still have had to choose on Friday afternoon whether to accept the government's offer or proceed to trial on Monday. Second, and more importantly, Melancon expressly told this Court at his rearraignment

---

[90] R. Doc. 181.
[91] R. Docs. 234 at 3; 258 at 8.

that he agreed that the contents of the factual basis were true and correct.[92]  Melancon cannot now argue that he is prejudiced by any failure to negotiate more favorable plea agreement terms or factual basis when he explicitly, knowingly, willingly, and voluntarily accepted those terms before this Court.[93]

Although he argues that he was "coerced" into pleading guilty because his trial counsel was unprepared for trial, this Court does not find that argument persuasive.  Melancon does not specify in which ways his trial counsel was unprepared for trial or point to any evidence of unpreparedness.  And based on the record, the Court finds no indication that trial counsel was not prepared for trial.  At the change-of-counsel hearing on March 15, 2022, Toomey explained, on the record, that he and his associates were prepared to proceed to trial.[94]  Further, Toomey, Andrade, and their colleagues had made a litany of pretrial filings on Melancon's behalf, including proposed jury instructions, proposed voir dire questions, two motions *in limine*, a motion to compel, and a motion for a subpoena, all of which indicate their familiarity with the charges against Melancon and that they had developed a defense strategy.[95]

Melancon may take issue with the fact that, on May 10, 2022, counsel sought a continuance to develop evidence related to a defense strategy Melancon revealed to his counsel in late March of 2022, over a year after Toomey enrolled as his counsel.[96]  This Court, as it has already explained, denied that continuance.  Assuming that Melancon's claim of counsel's unpreparedness is based

---

[92] R. Doc. 234 at 28.

[93] *Id.* at 28-29

[94] R. Doc. 161 at 5.

[95] Reflective of counsel's responsive and empathetic trial preparation, one of the motions which Toomey and Andrade filed ahead of trial aligns with the defense goal Melancon claims he "zealously advocated" for "from the outset of this case": the exclusion of Casey Robichaux's witness statements and information related to Melancon's previous drug convictions.  *See* R. Docs. 257 at 4-5 (explaining Melancon's desire to have Robichaux's statements and Melancon's prior drug convictions excluded); 189 (Melancon's motion *in limine* to exclude statements made by Robichaux and any and all details and facts surrounding Melancon's previous two drug convictions).

[96] R. Doc. 172.

on any inability of his counsel to present that defense strategy, however, it fails for two reasons. First, when denying that continuance, this Court explained that its denial was based on Melancon's conduct, not counsel's: "Had Melancon timely cooperated with his counsel, the supposedly 'new' trial strategy involving years' old jail calls would have been apparent (and pursued) much sooner."[97]   And second, the record indicates that counsel pursued that defense strategy even without a continuance.  To be sure, the record shows that Melancon's counsel moved to compel the government to produce the evidence necessary to present that new defense at trial,[98] but this Court denied the motion as moot because the government agreed to the request.[99]

Melancon also claims that he was prejudiced insofar as he "was held responsible under a higher guideline range based on the language included in the factual basis document."[100]  Although he does not indicate the precise language in the factual basis document with which he takes issue, this Court assumes he may be referring to the language in the factual basis which resulted in the two sentencing enhancements he objected to prior to his sentencing (the specific-offense-characteristic enhancement, for threatening an individual, and the obstruction-of-justice enhancement).[101]  If this assumption is correct, the Court rejects Melancon's argument here for the same reasons it overruled the objection at sentencing.   Thus, because Melancon, at his rearraignment, explicitly agreed to all the language in the factual basis, he cannot now claim that the language in the factual basis is inaccurate.  And again, as with his sentencing objection, Melancon neither provided nor pointed to any competent evidence in his § 2255 motion to show that the language in the factual basis is incorrect.  In sum, because Melancon agreed outright to

---

[97] R. Doc. 181 at 2.
[98] R. Doc. 173.
[99] R. Doc. 191.
[100] R. Doc. 257 at 5.
[101] R. Doc. 211 at 12 (paragraphs 45 and 48).

the language in the factual basis, and there is no indicia of unreliability regarding any of that information, this Court finds that Melancon was not prejudiced by any language in the factual basis, including specifically the language resulting in the specific-offense-characteristic enhancement and the obstruction-of-justice enhancement.

**2. Melancon is not entitled to relief on ground two, his claim that Toomey and Andrade failed to object to the Court's constructive amendment of the terms of the plea agreement.**

Melancon's second ground for relief also claims that Toomey provided ineffective assistance of counsel, citing his counsel's failure to object to what Melancon claims was this Court's constructive amendment of the terms of the plea agreement during Melancon's rearraignment hearing.[102]   The relevant portion of Melancon's plea agreement is reproduced below:

> Acknowledging these rights, subject only to the exceptions indicated in subsection (d) below, the defendant, in exchange for the promise(s) and agreement(s) made by the United States in this plea agreement, knowingly and voluntarily:
>
> ….
>
> b.  Waives and gives up any right to appeal any order, decision, or judgment arising out of or related to Title 18, United States Code, Section 3582(c)(2) imposed by any judge and further waives and gives up any right to challenge the manner in which his sentence was determined and to challenge any United States Sentencing Guidelines determinations and their application by any judge to the defendant's sentence and judgment;
>
> c.  Waives and gives up any right to challenge his sentence collaterally, including but not limited to any and all rights which arise under Title 28, United States Code, Sections 2255 and 2241, Rule 60 of the Federal Rules of Civil Procedure, Rule 36 of the Federal Rules of Criminal Procedure, writs of coram nobis and audita querela, and any other collateral challenges to his sentence of any kind[.][103]

---

[102] R. Doc. 255 at 5. Melancon's motion only alleges ineffective assistance of counsel by Toomey when asserting his second ground for relief.  *See id.*  However, his memorandum in support takes issue with both Toomey's and Andrade's failure to object to this Court's statement at the rearraignment hearing.  *See* R. Doc. 257 at 6.  In analyzing Melancon's second ground for relief, then, this Court will consider Melancon's allegations against both Toomey and Andrade.

[103] R. Doc. 199 at 3.

In addition, the relevant portion of the transcript of Melancon's rearraignment hearing is reproduced below:

> **THE COURT:** Also, according to the terms of the plea agreement, by pleading guilty, you waive your right to contest your conviction and/or sentence in a post-conviction proceeding, including, but not limited to a proceeding under 28 U.S.C. Sections 2241 and 2255 on any ground to the extent those rights can be waived. You retain, however, a right to raise a claim of ineffective assistance of counsel in an appropriate proceeding.
>
> Do you understand the extent to which you will waive these rights by pleading guilty?
>
> **THE DEFENDANT:** Yes, sir.
>
> **THE COURT:** According to the terms of the plea agreement, by pleading guilty, you also waive your right to appeal any order, decision, or judgment imposed by any judge arising out of or related to 18 U.S.C. Section 3582(c)(2) to the extent that this right is waivable, and you further waive and give up your right to challenge the manner in which your sentence was determined and your right to challenge any United States Sentencing Guideline determinations and their application by any judge to your sentence and judgment to the extent that those rights are waivable.
>
> Do you understand the extent to which you will waive these rights by pleading guilty?
>
> **THE DEFENDANT:** Yes, sir.[104]

In his motion, Melancon contends that "the court incorrectly amended the terms of his plea agreement when it stated that Mr. Melancon would be waiving his right to contest his conviction or sentence in a post-conviction proceeding, i.e., [28 U.S.C. §] 2241 and [28 U.S.C. §] 2255 or brought under 18 U.S.C. section 3582(c)(2)."[105]  In his memorandum, Melancon claims that a defendant cannot waive his constitutional right under § 3582(c)(2) to request a sentencing modification where the defendant's sentencing guideline range has been lowered by the Sentencing Commission following sentencing.[106]  He asserts that because this Court informed him that the terms of his plea agreement included a waiver of his "right to appeal any order, decision,

---

[104] R. Doc. 234 at 25-26.
[105] R. Doc. 255 at 5.
[106] R. Doc. 257 at 6.

or judgment imposed by any judge arising out of or related to 18 U.S.C. section 3582(c)(2)," and neither Toomey nor Andrade objected to such statement by the Court, the attorneys were ineffective.

The government responds that Melancon's petition omits this Court's explicit acknowledgment at rearraignment that Melancon only agreed to waive his right to an appeal pursuant to 18 U.S.C. § 3582(c)(2) "to the extent that this right is waivable."[107]  The government then notes that Melancon's waiver of his appellate rights under § 3582(c)(2) in his plea agreement was thus broader than the waiver in his rearraignment colloquy.[108]  Given this, the government submits that, to the extent this Court's language at rearraignment is considered a modification of the plea agreement, the modification actually benefits Melancon because the language is more favorable to him.[109]  In his reply, Melancon generally reiterates the arguments he asserted in his motion and his memorandum,[110] but he does not specifically counter the points made by the government in its response to his second ground.

This Court finds that the arguments Melancon advances in connection with his second ground for relief also do not show that Toomey's and Andrade's performance was deficient or that any deficiency prejudiced Melancon.  When confirming whether Melancon understood that, as part of his plea agreement, he waived his right to challenge his sentence or conviction in proceedings brought pursuant to 18 U.S.C. § 3582(c)(2), 28 U.S.C. § 2241, and 28 U.S.C. § 2255, the Court merely restated the rights that Melancon agreed to waive by signing the factual basis, signing the plea agreement, and entering a plea of guilty.  The language which this Court added when describing the rights Melancon would waive as part of his plea agreement did not amount to

---

[107] R. Doc. 258 at 10.
[108] *Id.*
[109] *Id.*
[110] R. Doc. 259 at 3.

a constructive amendment of the terms of the agreement that resulted in any waiver of rights he did not expressly agree to waive as part of the agreement. That language simply acknowledged governing law that invalidates a defendant's waiver of his right to challenge his sentence on certain grounds. Because this Court did not constructively amend the terms of the plea agreement, any objection by Toomey or Andrade as to this Court's description of said terms would have been meritless. Therefore, in failing to object to this Court's description of the terms of the plea agreement, Toomey's and Andrade's performance did not fall below any objective standard of reasonableness.

And, even if such objection would not have been meritless, Melancon could not show that he has been prejudiced by Toomey's and Andrade's failure to object. On the one hand, Melancon has not attempted to exercise any rights of appeal which he supposedly waived as a result of Toomey's and Andrade's failure to object to this Court's statement at the rearraignment hearing. On the other hand, he cannot show that his lawyers' failure to object impaired his ability to appeal, because the language the Court used was arguably more favorable to Melancon in terms of qualifying the appellate rights he was waiving. Thus, even if Toomey's and Andrade's performance had been objectively unreasonable, this Court cannot say that such performance would have prejudiced Melancon. As a result, there is no basis for granting Melancon's motion on his second ground for relief.

### E. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Melancon's § 2255 motion (R. Doc. 255) is DENIED.

New Orleans, Louisiana, this 17th day of December, 2025.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE